IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH GOLBECK AND SCOTT REICHEL, | )<br>)<br>) |
| Plaintiffs, | ) Case No.: 1:21-cv-4516<br>) |
| vs. | )<br>) |
| VILLAGE OF HOFFMAN ESTATES, TED BOS, KATHRYN CAWLEY, AND GREGORY POULOS, | )<br>)<br>) JURY DEMAND |
| Defendants. | |

## COMPLAINT

NOW COME Plaintiffs, JOSEPH GOLBECK and SCOTT REICHEL, by and through their attorneys, Jonathan C. Goldman and Sam Sedaei of the LAW OFFICES OF GOLDMAN & EHRLICH, CHTD., and as their Complaint against Defendants, VILLAGE OF HOFFMAN ESTATES, TED BOS, KATHRYN CAWLEY, AND GREGORY POULOS state as follows:

## JURISDICTION, VENUE, AND PARTIES

1. This is an action for violations of Plaintiffs' right to freedom of speech under the First Amendment to the United States Constitution, and right to Due Process under the Fourteenth Amendment to the United States Constitution.

2. Plaintiffs invoke the jurisdiction of this court pursuant to the First and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §1983 and 28 U.S.C. § 1331.

3. Venue is proper because Plaintiffs reside within the Northern District of Illinois, and the acts giving rise to this action occurred within the Northern District of Illinois.

1

4. Plaintiffs Joseph Golbeck ("Plaintiff Golbeck" or "Golbeck") and Scott Reichel ("Plaintiff Reichel" or "Reichel") are currently Sergeants with the Hoffman Estates Police Department ("HEPD").

5. Defendant VILLAGE OF HOFFMAN ESTATES ("Village") is a municipal corporation organized under the laws of the state of Illinois.

6. Defendant TED BOS ("Bos") is a resident of Illinois and was a Chief of Police at HEPD at all relevant times.

7. Defendant KATHRYN CAWLEY ("Cawley") is a resident of Illinois and was an Assistant Chief of Police at HEPD at all relevant times.

8. Defendant GREGORY POULOS ("Poulos") is a resident of Illinois and was an Assistant Chief of Police at HEPD at all relevant times.

## BACKGROUND

9. At all relevant times, Plaintiffs have worked for HEPD. They both joined HEPD in or around 1999.

10. On several occasions in 2018, Plaintiff Golbeck raised issues about a number of policies and practice at HEPD that he believed contributed to a degradation of morale among the HEPD workforce. He specifically raised these issues to, or in the presence of several HEPD chiefs and lieutenants, including Bos, Cawley and Poulos, and Lieutenants Julie Golden ("Golden"), Darin Felgenhauer, Kurt Gerlach, and Carl Baumert ("Baumert"). Several sergeants were also present during these discussions. The issues Plaintiff Golbeck raised included—but were not limited to—continued micromanaging of personnel, excessive discipline imposed on new officers for minor mistakes the newer officers were making, lack of leadership abilities by those placed in leadership positions, and a lack of teambuilding activities and training.

11. HEPD did not address any of the aforementioned issues. Many HEPD officers have resigned due to the existence of the very issues that Plaintiff Golbeck has raised.

12. In early 2018, Plaintiff Reichel learned that a traffic sergeant with HEPD—henceforth referenced by his initials J.T. ("J.T.")—may have been falsifying certain supervisor log entries, and reported the incident to his superiors, including Bos and Poulos. On information and belief, J.T. was never disciplined. Reichel could no longer trust J.T., and expressed his views about the negative impact of an individual like J.T. on the morale, integrity, and reputation of HEPD, to fellow sergeants, as well as Baumert and Golden.

13. In May 2019, Cawley met with Reichel, and asked him if he would be interested in taking the traffic sergeant position, which was held by J.T. at the time. Reichel expressed interest in the position, but indicated that J.T. already believed that Reichel was trying to sabotage his career. Reichel also once again discussed the various ways in which he believed J.T.'s lack of integrity negatively impacted HEPD.

14. In or around the fall of 2019, the Board of Fire and Police Commissioners ("Board") conducted the lieutenant promotional examination ("promotional exam"). The promotional exam was a requirement for all sergeants who wanted to be considered for lieutenant positions. In 2019 and 2020, there were at least three open lieutenant positions.

15. In 2019, COPS and FIRE Personnel Testing Service ("COPS and FIRE"), a private company, was hired to administer the promotional exam. The exam consisted of different parts, including the written portion, an oral interview, practical portion, and other subsections. Cawley announced the exam via an e-mail on July 25, 2019. The instructions set a date of September 10, 2019 for the written exam, and included instructions for the exam. Six sergeants registered to take the promotional exam.

16. On September 10, 2019, COPS and FIRE administered the written portion of the promotional exam. It contained 250 questions, which examinees answered via scantrons. According to the Rules and Regulations of the Board, examinees needed a score of 70% or better to pass and move to the next level.

17. On September 11, 2019, Bos informed Plaintiff Golbeck in writing that Golbeck had received a score of 77.2% on the written exam. On the same day, Reichel received an e-mail from Bos, stating that he had scored 89.7% on this portion of the exam.

18. On October 5, 2019, examinees took the Assessment Center portion of the promotional exam, which consisted of 25 items to sort out and explain. During the test, the instructors informed the examinees that the instructors had "made a mistake" by giving two examinees 15 items to sort out while four were given 25 items. Instead of taking the proper action and cancel and reschedule a new exam, the proctors simply left it to the 6 sergeants to decide on an "agreed" solution, and consequently, the aforementioned two examinees—including Plaintiff Reichel—were provided the missing 10 items, and given 15 additional minutes to review their exam material. On or about October 7, 2019, Reichel complained to Cawley and her secretary about the way the issue with the Assessment Center exam was handled and explained that he was provided with insufficient time to review the 10 additional items, and that the instructors' mistake on the first portion had impacted his performance on the second portion of the exam, but Cawley shut down any further discussion on the topic.

19. On October 8, 2019, Plaintiff Golbeck received a letter from Bos advising him that he had successfully completed the Assessment Center portion of the promotional process with a score of 80%, and that he was qualified to move on to the next phase of the testing process. Similarly, Reichel received a score of 81.67% on this portion.

20. On October 18, 2019, both Golbeck and Reichel took the Oral Interview portion of the promotional test. Fire and Police Commissioners Pete Mirkovich and Rebecca Darr, and Village of Hoffman Estates ("Village") Trustee Michael Gaeta conducted the interview. Bos was present in the room, but did not speak.

21. Sometime after October 18, 2019, two assistant chiefs met with Bos to determine the so-called "Chief's Points" for each examinee, which was to be used as an element in deciding lieutenant promotions. While lieutenants were asked to provide input into this process in prior years, they were excluded from the process for the first time in 2019. Chief's Points had a substantial impact on the candidates' placement on the promotion eligibility list because, according to the Rules and Regulations of the Board, 15% was allocated to this factor, while only 10% was allocated to the written exam.

22. On December 18, 2019, HEPD posted the Preliminary Eligibility List for Lieutenants.

23. On December 30, 2019, Golbeck sent an e-mail to Poulos and asked for a copy of his test score results from all components of the promotional exam. On December 31, 2019, Poulos provided Golbeck with the written test scores.

24. On December 31, 2019, Plaintiff Golbeck learned that he was granted 7 "Chief's Points" out of the possible 10 points.

25. On January 1, 2020, Plaintiff Golbeck clarified to Poulos that his previous request was to receive not just the scores, but detailed written results that would reflect questions he answered correctly and incorrectly. He also sought to obtain a breakdown of the Assessment Center portion with the assessor's notes.

5

26. On January 2, 2002, Cawley e-mailed Golbeck and informed him that COPS and FIRE only provided HEPD with individual scores.

27. On January 6, 2020, Cawley asked to privately meet with Plaintiff Golbeck. Golbeck expressed his displeasure about the number of Chief's Points that he had received, and what he believed to be a flawed promotional testing process. During this meeting, Plaintiff Golbeck stated to Cawley that he no longer wished to see the detailed results of his written exam.

28. On January 10, 2020, Cawley's secretary sent an e-mail to the examinees, and included the "Final Eligibility List dated December 29, 2019." Examinees had 35 days to dispute the accuracy of the list.

29. On January 12, 2020, Plaintiff Golbeck e-mailed Cawley, and renewed his request to see a detailed copy of his exam results.

30. On January 15, 2020, Cawley e-mailed Plaintiff Golbeck and indicated that COPS and FIRE had agreed to provide him with the results, but he would have to make an appointment and go to COPS and FIRE's offices to review the results in person. In a one-on-one meeting on the same day, Bos referenced two alleged clerical errors by Golbeck as an implausible reason for granting him 7 Chief's Points, and stated, "we all know you are retiring in a couple of years."

31. On January 24, 2020, another examinee first contacted the appropriate individual at COPS and FIRE named Michelle (last name unknown, henceforth referred to as "Michelle") who stated that the soonest time that examinees could review his results was February 7, 2020.

32. On February 7, 2020, Plaintiff Golbeck visited COPS and FIRE to review his exam results. Michelle told Golbeck that he could not take any notes, or touch any papers, and that the instructions came from Cawley. Golbeck asked Michelle about the number of questions that he answered correctly from each individual subsection, and whether the questions from the

6

four different sections were weighted differently. Michelle informed Golbeck that he had answered 176 questions out of a total of 250, provided Golbeck's individual subsection scores, and indicated that the questions were equally weighted.

33. Golbeck noticed that 176 divided by 250 yielded 70.4%, which was 6.8% below the 77.2% score that he was told he had received. This is significant, because if the scores of two other sergeants were adjusted in the same way that Golbeck's appeared to have been, that would indicate that those other sergeant's true scores were around 64% and 66%, which would have disqualified them from progressing through the lieutenant selection process.

34. During the February 7, 2020 meeting between Golbeck and Michelle, Golbeck also asked to review the Assessment Center portion of the promotional test. Michelle responded that HEPD already had those results, and Golbeck needed to speak with Cawley.

35. On February 12, 2020, Plaintiff Golbeck visited COPS and FIRE once again to ask Michelle why it took over two weeks for him to be given the opportunity to review the test scores, but was provided with implausible excuses. On information and belief, HEPD and COPS and FIRE purposefully caused delays in permitting Plaintiff Golbeck to review his test results in order to let the 35-day period referenced in ¶ 28 above lapse.

36. Reichel scheduled an appointment with Michelle for February 19, 2020 to review the details of his exam. On February 17, 2020, Cawley came to Reichel's desk, and informed him that Bos wished all requests to review test scores to go through him. On the same day, Cawley called Reichel and advised him that his test scores were ready to review. Reichel went to Cawley's office.

37. During the meeting with Cawley on February 17, 2020, Reichel learned that he had received 5.8 Chief's Points, the second lowest of all examinees in 2019.

38. On February 19, 2020, Reichel met with Michelle to review his exam documents. Reichel was also told that he could not take notes, or make any copies. Reichel asked several questions about the weight of various sections, but Michelle failed to answer them, stating her concern that a number of people were asking similar questions, and she did not want to say the "wrong thing." Nevertheless, she stated that certain questions had more points, a fact she had not disclosed when Golbeck visited COPS and FIRE twice earlier that month. Reichel also asked Michelle how his answering 197 out of 250 questions correctly yielded a score of 89.7%, and she stated that she did not know, and did not know who at COPS and FIRE might be able to answer. Reichel also asked John Sidbeck (on information and belief, an owner or a manger at COPS and FIRE), but he also could not explain how the scores were calculated.

39. On February 21, 2020, Cawley and Bos asked to meet with Reichel, and informed him that COPS and FIRE had complained about him, because it did not expect the questions Reichel and Golbeck have been asking. They also told Reichel that their inquiries were making HEPD "look bad," and his inquiries were "not going to fly." Bos asked what else Reichel needed to know about the scores and Reichel answered, but Bos and Cawley have since failed to follow up with him.

40. Plaintiffs believe the scores of all six examinees were raised in order to bring the scores of the two individuals referenced in ¶ 33 above the 70% threshold. The same two individuals were then listed as numbers 1 and 2 on the "Final Eligibility List dated December 29, 2019", as referenced in ¶ 28. One of these individuals (J.T.) has already been promoted to lieutenant as of the time of this filing.

41. Because the number of lieutenant positions in 2019 were limited, appointment of less qualified individuals through improper processes meant that Plaintiffs were deprived of a fair opportunity to be appointed lieutenants.

42. On February 10, 2021, Poulos called Golbeck to his office, and expressed his displeasure about Golbeck's ratings of his officers, stating that they did not deserve the ratings because they had not executed enough traffic stops, or conducted enough arrests. Golbeck disagreed, and also expressed his mistrust towards Poulos due to the latter's role in the 2019 promotional testing process.

43. On or about February 28, 2020, Plaintiffs, through an attorney sent a letter to Mayor William D. McLeod, President of the Village Board, Complaining about potential the impropriety of the promotional exam process. He also indicated that he was investigating the promotional testing process, and that if he found any impropriety in the testing process, he would communicate that information with McLeod.

44. Reichel received his 2019 Performance Evaluation dated March 4, 2021, in which he was given an overall rating of "Above Standard." He revied the evaluation on or around April 4, 2021. It was signed by Cawley and Bos. On the evaluation, Cawley had marked Reichel down in a number of categories without any evidentiary or documentary support. Notably, Golden subsequently informed Reichel that the last time he had received a supervisor log entry was in May of 2016, thereby further confirming that the less than favorable evaluation was not justified.

45. On March 29, 2021, Golbeck received his 2020 Performance Evaluation, in which he was given an overall rating of "Standard." It was signed by Poulos, Cawley, and Golden. In his 27 years of service, he had never before received an evaluation that was less than "Above Standard" or "Outstanding." The rating resulted in Golbeck's loss of paid vacation days. Upon

9

reviewing the evaluation, Golbeck quickly identified several inaccuracies. He indicated below his 2020 evaluation that he did not concur, and wished to review the evaluation with Human Resources, or the Village Manager.

46. On April 5, 2021, Poulos e-mailed Golbeck, acknowledged Golbeck's lack of concurrence with the evaluation, and suggested a meeting with him and Cawley as the next step. On April 7, 2021, Golbeck e-mailed back and agreed to meet with Poulos and Cawley. Poulos then called Golbeck to his office to discuss the evaluation. Golbeck asked Sargent Bryant Savage to accompany him.

47. During the April 7, 2021 meeting, Golbeck pointed to the inaccuracies in his evaluation. Notably, Golbeck indicated that several points from his conversation with Poulos on February 10, 2021 were added to his 2020 evaluation in a way that took them out of context. Also during this meeting, Cawley told Golbeck that she had heard that he was asking officers to leave HEPD. Golbeck explained that the opposite was true.

48. On May 11, 2021, Poulos sent Golbeck a revised version of the 2020 evaluation, but Golbeck informed him that there were still several deficiencies. Poulos asked Golbeck to write a rebuttal. Golbeck told Poulos that he would not write a rebuttal as he did not think it would matter, and again signed the evaluation without concurring. Notably, Golbeck's request to meet with H.R. or Village Manager were removed from the revised draft.

49. On May 25, 2021, Golbeck e-mailed the new Village Manager, Eric Palm ("Palm"), and welcomed him to the government. Golbeck also requested a meeting to discuss a few matters. The two subsequently met, and Golbeck raised the issues relating to the promotional testing, his erroneous 2020 evaluation, and several other issues that negatively impacted HEPD. Golbeck indicated in this meeting that he had a target on his back and if and when Cawley finds

out about their meeting the target will become larger, and Palm responded that he had already informed Cawley that Golbeck was going to meet him.

50. Since the involvement of Plaintiffs' attorney referenced in ¶ 43, Plaintiffs have faced additional retaliation and harassment, such as a lack of communication. Golbeck often learns about changes to policies and procedures from subordinates. Reichel has also been subjected to various forms of harassment. As an example, on April 2, 2020, Cawley sent two traffic officers under Reichel's supervision back to the patrol division without first communicating with Reichel as their director supervisor as it is normally done. In May, 2020, Bos sent an e-mail announcing that the two traffic officers were to remain in the patrol unit, again without first communicating with Reichel. On June 17, 2020, Reichel inquired as to the status of the two traffic officers. In response, Chiefs called Reichel into their office, informed him that officers would not be performing traffic duties, and reassigned Reichel himself to the patrol unit. They told him that he could no longer use his office, and had to move his computer and any other necessary items to the patrol supervisor desk.

51. On August 12, 2020, J.T. informed Reichel that Cawley had charged J.T. with conducting an internal investigation into a matter that had occurred at the station on July 24, 2020. On August 13, 2020, Golden met with Reichel in J.T.'s presence, and informed Reichel that he was being investigated. Reichel sought a union attorney's presence at any investigative interviews. In light of the history between J.T. and Reichel, J.T.'s selection as the individual to investigate Reichel, and the questions he asked Reichel during a recorded investigative interview were further retaliation for his complaints about the issues discussed herein.

52. Reichel has also received at least one false negative supervisor log entry since complaining about the promotional testing process and the involvement of their attorney.

## COUNT I – 42 U.S.C. §1983 AND
## FREE SPEECH UNDER THE FIRST AMENDMENT
**(Against All Defendants)**

53. Speech by Plaintiffs and their retained attorney about the degradation of morale at HEPD, improper procedures that were used in the promotional testing processes in 2019, and the impact of a specific individual's conduct on the integrity of HEPD were speech on matters of public concern.

54. The aforementioned speech is protected by the First Amendment to the U.S. Constitution, and related to matters of public concern.

55. Defendants took adverse action against Plaintiffs when they subjected them to various forms of harassment, gave them false negative evaluation reviews, undermined their authority before their subordinates, and artificially raised the scores of less qualified individuals and caused other irregularities during the 2019 promotional exam process.

56. At least some of the adverse actions discussed herein were taken by Bos, HEPD's ultimate policy-making authority.

57. Plaintiffs' free speech right to discuss and raise the aforementioned issues outweighed any legitimate interest Defendants had to suppress their speech.

58. As a direct and proximate result of Defendants' violation of Plaintiffs' constitutional rights, Plaintiffs have suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including reasonable attorney's fees, loss of reputation, humiliation, embarrassment, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT II – 42 U.S.C. §1983 AND DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION
### (Against All Defendants)

59. Plaintiffs restate and incorporate ¶¶1-58 of Count I as ¶¶1-58 of Count II.

60. Plaintiffs had a protectable property interest in their current positions without being subjected to harassment and retaliation, and a fair and equal opportunity to be promoted to lieutenants.

61. Defendants deprived Plaintiffs of their property interest without due process when they subjected them to various forms of harassment, gave them bogus evaluation reviews, undermined their authority before their subordinates, and artificially raised the scores of less qualified individuals and caused other irregularities during the 2019 promotional exam process.

62. At least some of the adverse actions discussed herein were taken by Bos, HEPD's ultimate policy-making authority.

63. As a direct and proximate result of Defendants' violation of Plaintiffs' constitutional rights, Plaintiffs have suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including reasonable attorney's fees, loss of reputation, humiliation, embarrassment, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

**WHEREFORE**, Plaintiffs JOSEPH GOLBECK and SCOTT REICHEL request that this court enter a judgment in favor of Plaintiffs and against Defendants VILLAGE OF HOFFMAN ESTATES, TED BOS, KATHRYN CAWLEY, and GREGORY POULOS, and that Plaintiffs be awarded the following relief:

    a. Backpay, plus pre-judgment interest, and any negative tax consequences resulting from an award of a lump-sum payment;

    b. Front pay;

    c. Attorney's fees;

    d. Compensatory damages; and

    e. Such other relief as this court deems appropriate.

Dated: August 24, 2021                        *Respectfully submitted,*

                                                                          */s/ Sam Sedaei*
                                      Sam Sedaei of the Law Offices of Goldman & Ehrlich, Chtd., as attorney for Plaintiffs JOSEPH GOLBECK and SCOTT REICHEL

Jonathan C. Goldman
Sam Sedaei
10 South LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 332-6733
Jon@GoldmanEhrlich.com
Sam@GoldmanEhrlich.com